Good morning, and may it please the Court, Andra Lim on behalf of Appellants Dook and David Yocom. With the Court's permission, I'd like to reserve two minutes for rebuttal. All right. Keep an eye on the clock. Will do. This case presents two issues. First, the Yocoms have adequately pleaded that the government violated their due process rights under this Court's precedent in Ching v. Mayorkas. The government determined that Dook's prior marriage to T.L. was fraudulent, without providing an opportunity to cross-examine critical witnesses. The complaint alleges that the key evidence supporting the marriage fraud determination was the result of an immigration officer making a highly coercive threat to out Dook to his wife, T.L. Just a minute, Ms. Lim. Let's take basic procedural steps. This is a 12b-6 motion. District Court granted it. That means you haven't alleged, according to District Court, sufficient facts which are plausible to frame a cause of action for the cross-examination you seek. Just now, you made a claim that the actions of the immigration officers were coercive. Right? Correct. Where in your complaint are facts alleged which make it plausible that there was coercion? Two points in response to that. So both the complaint and its attachments. There's a declaration from Dook where he explains exactly what happened in the immigration interview and describes the immigration officer making this threat to reveal his sexual orientation to T.L. I also think the amicus brief filed in this case provides really critical context. On pages 20 to 24, that brief explains why a threat to out someone is so coercive. It explains that someone's sexual orientation is a private... I'm not so interested in the argumentation as closing up the amicus brief yet. What I'm interested in is what facts were alleged that make the actions of the immigration officer coercive. For instance, was there any allegation that the immigration officer yelled and screamed at these two persons? No. Is there any allegation that the immigration officer threatened either one with criminal prosecution or other government action? No. I think what you're saying, if I understand you correctly, is that the presence of an immigration officer with these two persons and the allegations of the complaint that the immigration officer told T.L. to sign the statement she had redacted, that constituted coercion. Plus, the fact that the immigration officer said, shall I tell her or will you tell her about what apparently was unknown homosexuality of Duck? Is that the basis of your coercion statement? So the basis of our coercion statement does rely heavily on the immigration officer saying to Duck, I am going to out you to your wife, T.L., whom you have never shared this highly shameful secret with. It also consists of, after that, Duck becoming extremely embarrassed and humiliated and the tried to explain otherwise. The complaint alleges that he tried to tell the immigration officer, no, I'm not going to take her out later and pay her for this marriage. That's not what's happening. And still the immigration officer kept insisting that their marriage was fraudulent. I do. And what you're seeking is a reversal and remand with instructions that an evidentiary hearing be allowed at which you can cross-examine T.L., correct? What we're seeking at this stage is a reversal so it can go back to the district court and continue to be litigated. Because we're at the motion to dismiss stage, all that would happen upon reversal is that we would continue being able to litigate this claim in district court. So this court is not being asked to decide whether we are in fact entitled to cross-examination. The only question... All right, but what you're really seeking is to cross-examine T.L. and the immigration officer, I take it? Yes, we are seeking to cross-examine both of them. All right. Is there anything in the record from T.L. that indicates that she felt coerced? And if so, upon what facts? So a reasonable inference from the complaint is that what happened from T.L.'s... Pardon me. You had attachments to the complaint. You had a declaration from Mr. Duck. There was no declaration from T.L., correct? Correct. There was no declaration from T.L., but I actually think that's consistent with their marriage being bona fide. If you look at things from her perspective, what happened is that she married Duck, intending to establish a life with him, intending to be married to him, and then found out in pretty bad circumstances that her husband was actually gay and then ended up divorcing him. And in those circumstances, you might think that she might not be willing to help Duck As a supposition on your part, but is there any declaration or any part of the record saying that you attempted to get a declaration from T.L. saying that the tone of the voice of the immigration officer and the fact that the immigration officer asked her, shall I tell him or are you going to tell him? Had that coerced her or was it some element of duress against her? Two points in response to that. There's nothing in the record that shows whether or not we tried to get a declaration from T.L. Again, I do think at the motion to dismiss stage, the court is required to draw all reasonable inferences in the plaintiff's favor, and I think the inferences you can draw here is that what happened from her perspective is that there was an immigration interview that was going just fine. She saw the officer make some sort of very serious threat towards her husband, saw her husband start to shake, break down, become humiliated, saw that the officer was determined to find that their marriage was fraudulent, and then ended up succumbing to that threat. What relief are you seeking here? I mean, if we send it back down and you can amend, what relief would you like to have? So at the end of the day, we would like on the due process claim cross-examination of T.L. and the officer. If you send it back, what would happen, I think, is that there would be discovery on this claim and it would continue being litigated. So it wouldn't be an automatic cross-examination at this point. Counsel, Judge Gould, if I could interject a question. If you've completed your answer to Judge Slavin. Yes. So a motion for summary judgment can be filed at any time in the proceedings. So as I would understand it, if you were to, if you persuaded our court to reverse the case for further proceedings, the appellee would be free to move for summary judgment and require you to submit some affidavits or declarations along the lines of what Judge Mayer was inquiring about. But for now, we're only looking at the pleadings. So what did the pleading itself allege on this issue, of course? So what the pleading itself alleged is that the immigration officer looked at Duke's phone, saw pictures that made her realize that he was gay, threatened to tell his wife, T.L., that he was gay, something that he had never told her before, something he had not shared with anyone, something that was a tremendous source of shame for him given the conditions of where he grew up in Vietnam and given how his family had been really pressuring him to marry a woman, that after the officer made that threat to Duke, he started to become embarrassed, basically went into a state of shock, and it was sort of when he was in that state of shock that the officer kept insisting that they weren't a couple. The complaint alleges that she asked questions about whether they were a couple but then answered them herself and insisted that they weren't, even as Duke tried to explain, no, he wasn't paying T.L. for marriage. And so what the complaint alleges is that you have this very serious and extreme threat to share something that's incredibly personal and incredibly for Duke a source of shame, and then followed by the officer continuing to apply pressure until both of them succumbed and signed statements saying that their marriage was fraudulent. And those circumstances that are pleaded in our complaint, the court must accept as true, and I think it shows an incredibly high risk of erroneous deprivation when the key evidence that the agency is relying upon was both taken under coercive conditions and where the complaint alleges that the evidence actually is false. Thanks, counsel. I think you answered my question. You just would like us to send this back to the district court so that the proceedings can follow and it's not dismissed on the pleadings. Yes, that is correct. We're just asking this court to dismiss based on what's in the pleadings. If that happens, this will go back, an evidentiary record will be created, and then at that point either side or both sides can move for summary judgment. And I'll just add that that's actually the posture in which Ching and other cases involving these sorts of issues have come before this court. This court hasn't had very many cases since Ching requesting cross-examination under Ching, but a lot of them have arisen in the summary judgment posture, which does seem like an appropriate posture in which to litigate these issues. Are you seeking money damages in this case or some sort of an injunctive relief? At this point, all we're seeking is for, one, a due process claim to be reversed, and then the ultimate goal of getting cross-examination. And then separately, independently of the APA claim, what we're ultimately seeking, I think, is for this case to be sent back to the agency. And what we see in our complaint is that we are entitled to a grant of the I-130 petition based on what is in the record. And so that's really the ultimate goal here is for David's I-130 petition to be granted so that Dook can then apply for adjustment to lawful permanent resident status and be able to remain lawfully permanently in the country with his spouse. Let me ask you, do any of your allegations state that T.L. felt coerced? You've stated that Dook got nervous and started shaking and was embarrassed. But as to T.L., I don't see any allegations that T.L. was embarrassed or shaking or in any way coerced or under duress. Two points in response to that. So the motion to dismiss stated not just the allegations that have to be accepted as true but reasonable inferences from them. And so the reasonable inference here is that what T.L. saw was that her husband received this very serious threat that caused him to go into a state of shock, that the officer kept insisting that they weren't a couple, and that she felt pressure to succumb to the narrative. I will also say that if the court grants us leave to amend, we can absolutely add more specific allegations. Did you ask for leave to amend below? I believe we did, and the district court denied leave. In either way, the district court did say that we are not allowed to amend the complaint, so it is something that the district court did consider. And because the district court did rule on it, I think it would be appropriate for this court to reverse on that basis too. And the complaint that the district court dismissed on the pleadings was the first complaint you filed? That's correct. It's just the one complaint, Judge Gould. So you never had a chance to amend even once? We have never amended the complaint. And, again, I'll note that I see that my time is up. We'll give you two minutes. Okay, thank you. Mr. Dowrow. Good morning, Your Honors. Joseph Dowrow on behalf of USCIS. This court should affirm the district court's order dismissing the complaint for failure to state a claim because David and Doug Yocum, and apologies if I'm misstating his name. You have to repeat because you were looking down and speaking and you didn't pronounce your words adequately, so try again. Certainly, Your Honor. Take your time, Mr. Dowrow. The court should affirm the order of the district court dismissing the complaint for failure to state a claim. The Yocums received the process they were due, and they failed to plausibly allege an APA violation. In this case, the district court was presented with two smoking gun sworn statements by Doug and his former wife, T.L., claiming that they were just friends, that they never lived together, and that they married solely so that Doug could obtain a green card. Those statements, as I read the complaint, were typed out by the immigration officer on her computer and then printed, correct, after T.L.? As the T.L. Doug's was handwritten. Right. And then she put it to T.L. to sign the statement, and T.L. did so. I believe that is how it is alleged. However… And then after she signed the statement, she turned to Doug and she said, write out your statement, follow what T.L. wrote out, copy that, correct? Those are the allegations, correct, Your Honor. Don't you think that that indicates some sort of overbearing duress? No, Your Honor. Even if that is procedurally how it played out, the complaint doesn't offer any plausible allegations as to why T.L. would agree to sign and ratify such a statement claiming marriage fraud, exposing herself to potential liability for perjury and marriage fraud if there was no reason to do so. The same, although slightly different rationale goes for Doug's agreeing to copy over that statement and sign it. Granted, he does allege that he had a separate motivation for wanting to be in this marriage, to hide his sexual orientation. But as the district court correctly pointed out, that just provides an additional reason. That doesn't undermine the claim that he engaged in marriage fraud that he signed in that statement. Counsel, were the Oakland's counsel allowed to cross-examine T.L.? No. To be fair, they only requested cross-examination of T.L. To my understanding, in the first instance, in front of the BIA, which is not a fact-finding body, and so there would not have been a procedure there for cross-examining. That would have to be something that would be done back by USCIS as the original fact-finder in this procedural process. However, if they had asked for cross-examination at the time that we're talking to the USCIS officer, how could that have been done in an interview? At the time, just for clarification, are you talking about after the first marriage? Yeah. You indicated that at the second interview, right, they didn't ask for cross-examination of T.L. and the first officer. I can't remember her name. But how could that request have been granted by the USCIS officer in an interview? In that interview, you're correct. That probably would not have been the best place to request it, but they could have requested it in response to the notice of intent to deny or the amended notice of intent to deny. And at whom would they have requested the right to cross-examine? Well, according to their allegations, they sought to cross-examine T.L. and the USCIS officer. Who could grant their request to cross-examine if they had made a request after the receipt of the second NOID? Presumably USCIS. That's my understanding. How is that under the King Island case? You're representing USCIS. Tell me who in that agency could say yes, give them a chance to cross-examine, and how would that be done in a courtroom, in a deposition? How would that be done? Well, Your Honor, I think the confusion arises from the fact that this isn't part of the normal process. The only time a cross-examination has been ordered in this context, to USCIS' knowledge, is the King case. How is that done there? Well, the court ordered, and so it was sent back, and USCIS conducted it after the court ordered it. There was a demand and there was a request in the United States District Court, right? Yes. And that's not what they've done here? Here, in District Court, they allege that they were denied cross-examination by the agency. And they requested the right to cross-examine. They claim that procedural due process requires the right to cross-examine, but my reading of the complaint isn't that they want the District Court to handle the cross-examination, but they want the matter remanded to the agency for the cross-examination. I think I'd be happy if the District Court ordered an evidentiary hearing at which T.L. and the officer could be cross-examined in open court. Wouldn't you? I think that's my point. I guess, yeah, they'd probably agree. But there would be no legal rationale, no basis why they'd be entitled to such cross-examination. I just think the King case gets them that right. I know, Your Honor. King is distinguishable for several reasons. That case was based on a very unique and extreme set of facts. In that case, the ex-spouse gave a statement suggesting marriage fraud years after the couple had divorced. And the individual who was applying for the green card for the I-130 classification, he wasn't, excuse me, she, Ms. Ching, was not present when that statement was given. Unlike here where Duke was present, excuse me, Duck was present when T.L. gave the statement, and so knows the circumstances under which it was given. Further, in the King case, that statement by the ex-spouse was the only evidence of marriage fraud stacked against substantial other evidence that the couple lived together, had engaged in marital intimacy, and had substantial objective evidence that they had merged their lives. Counsel, can a couple live together with an intent to have a lifetime together without having sexual intimacy? I believe so, Your Honor, and I'm sure there are cases that have found that. The test is only whether they intended to form a life together at the inception. So sexual intimacy would just be one indication among a whole constellation of indications as to whether the couple intended to form a life together when they were married. Do you suppose the problem here with the complaint, from your perspective, is you think it does not allege in the complaint that they planned to have a life together? Correct, Your Honor. They do not allege that they will. They allege that they planned to form a life together, but that is a legal conclusory statement. The underlying factual material that they allege does not indicate that they intended to form a life together, and the district court was looking at the two sworn statements. And even if the court accepts Duck's discussion about how the USCIS officer looked at the pictures and he felt tremendously coerced to give this statement, none of the complaint's allegations suggest a plausible reason why Thiel would agree to give the same statement. Nor do the complaint's allegations overcome the paucity of objective documentary evidence that the couple had substantially merged their lives and assets like you see in other marriage fraud cases. Did plaintiff get an affidavit from Thiel about this? No, Your Honor. Saying he was coerced or anything like that? No, Your Honor. And in other cases that involve marriage fraud, you sometimes see that, where the former spouse writes a letter or signs an affidavit saying, this statement was obtained under these coercive or misunderstood reasons. Here, there was none of that, further indicating that there is no plausible reason why Thiel would have agreed to sign the statement under penalty of perjury unless it was true. Was the statement under penalty of perjury? No, but it was a sworn statement. Maybe a sworn would. I'm sorry, I read the statement. I didn't see any statement that she said, I'd make the statement under penalty of perjury or I swear to the truth of this statement. It's just a plain statement. It is a sworn statement, though. Who swore? My understanding is that these statements are sworn statements. What's the basis of that understanding? You think that every statement that's signed by a litigant is sworn? Anyway, I think you've answered my question by your silence. It was on an official government record in the I-130 application withdrawal. Part of the record. Okay, so I have a further question for you, if I may, please. Do you agree with your friend on the other side's contention that at this stage, when you have a pleading dismiss, that we have to take all reasonable inferences in favor of the claimant? All plausible factual inferences, correct. Any legal conclusory claims, the court doesn't need to accept. And it's not just purely reasonable. It has to be a plausible inference. I also want to note this. You mentioned that in other marriage fraud cases, there are often affidavits from parties stating what they intended to spend a life together or whatever. But in those cases, aren't those issues? Normally don't they come up with that evidentiary record at the summary judgment stage and not on a motion to dismiss the pleadings? Well, Your Honor, in such cases, actually that evidence would almost always be produced before the agency to begin with because of the unique way in which APA review is done. By the time it gets to the district court, the district court is already acting as an appellate review body, and so it's just reviewing the record amassed by the agency. And so here, if we were to go back down to the district court, the agency would just produce the administrative record, and that would be the entirety of everything that the decision maker below had looked at. And that's what would be the basis for summary judgment. Okay, thank you, counsel. Thank you. And so to go back to the original, I think we were talking about Ching. There, because that statement by the ex-spouse was the only evidence of marriage fraud stacked against all those other evidence, the risk of early separation in that case was. Was it Ching, the statement of the ex-spouse, said that he'd been promised $32,000 but only received $14,000? So that is a basis for bias in his statement, but I don't see any basis for seeing a bias in T.L.'s statement, do you? I do not, Your Honor. I think that's a big distinguishing fact, isn't it? It is. And I think in Ching, one of the reasons why the court said we can assume that there might be bias is that the statement was given after the couple had divorced. Here in this case, the statement was still given while T.L. and Duck were still married, and prior to T.L.'s learning about Duck's sexual orientation based on the allegations. There. As to the APA claim, that was done in sui sponte, right? Correct, Your Honor. Is there anything wrong with that? Well, ordinarily, if the court's in sui sponte, it would provide notice and opportunity to respond, but this Court's precedent has made clear that that's not necessary. If there's no possible way that the plaintiff can prevail on the claims as they have alleged, and the district court here reasonably concluded that there was no possible way that the outcomes could prevail, and that's the same reason why it's not a need to amend. That looking at the allegations, as they existed, taking all of the selectively excerpted pieces of the record that the plaintiffs attached to support their position, the court concluded that there was nothing that could overcome these statements and lack of evidence of the couple substantially merging their lives together. Okay. If D.L. had come forward either by deposition or affidavit and said this was done under coercion and that it was all wrong, would this case continue on? But we don't have that. But what if he had done that or she had done that? That's a good question, Your Honor. I can't really speculate because I guess we'd have to look at the circumstances and what T.L. actually said about the reason for the coercion. But, as you point out, we don't have that here. We have no indication to think that T.L. was coerced in giving that statement. I see my time is up. Thank you very much. Ms. William, you've got a full two minutes. Put two minutes on. But before that starts, because I'd like to ask you a question. It occurred to me that the reason that Duck gave for the wedding to T.L. was that he wanted to marry a woman to keep the fact of his homosexuality secret from his parents. Right. That's correct. Why didn't he marry a woman in Vietnam? I mean, he picked a woman in the United States, but why didn't he marry a woman in Vietnam? Is there any indication as to that? I don't know the answer to that question. I do think what's important, though, is that the complaint alleges that his reasons for marrying T.L. were what makes a marriage bona fide, right, which is the intent to establish a life together, and that wanting to marry someone in order to establish a conventional life with them to hide one's sexual orientation does count as an attempt to establish a life with someone under the INA. And I would submit that that's what's really important here is his reasons for marrying T.L. do count. That could have been done by marrying a woman in Vietnam just as well, right? But, of course, then you wouldn't have a I-130 petition. Well, before he had married T.L., he had been in the U.S. for a period of time studying in school, and so he was here for a while and then ended up marrying T.L., and the complaint does allege that while he was in the U.S., he did talk to his parents, who during that time pressured him to marry a woman. And so you have a situation where he's here in this country and his family is telling him,  All right. Pardon me, I've taken up all your time with my questions, so why don't you give her another two minutes so she can do her rebuttal correctly. Thank you, Judge Mayer. Three points in rebuttal. First, this case really is just like Ching. In the Ching case, the court was clearly very worried that the immigration officers had gone to the ex-boss' house, made some sort of threat or intimidation towards him, and that was a reason why there was a high risk of erroneous deprivation. Here again, the complaint alleges, and those allegations must be taken as true, that there was a very serious threat made to Duck to out him to T.L. As for the part in Ching. The threat was a threat to T.L. Sorry, the threat was made to Duck to out him to T.L. And then as for the part in Ching about, you know, malice or jealousy, I think that that's relevant because the court thought that those were reasons why the ex-boss might have succumbed to the threat. I think here you can infer that the reason why T.L. might have gone along with what the immigration officer was saying is that clearly the officer saw something on Duck's phone that, you know, made their marriage seem maybe less valid than T.L. had thought it was, and that was a reason why T.L. might have gone along with this officer's narrative. And so I don't think that that part of Ching is a reason to distinguish this case from that. I'll also just point out that here, too, the agency's marriage fraud determination rested on the statements and that there was significant evidence of the marriage's bona fides in the record. There were joint tax filings, a bunch of evidence of joint commingled finances, evidence that they had met each other as parents, and then country conditions evidence supporting Duck's explanation that he married T.L. to hide his sexual orientation and appease his family. And then just very quickly on the request point that you were discussing with my friend on the other side, the government hasn't pointed to any requirement that you have to have made a request to USCIS in order to be able to raise it to the BIA. The general rule is that you just have to raise something before the agency proceedings end. And as Judge Baya was alluding to, I think, USCIS proceedings are non-adversarial and it would be extremely unusual to have an adversarial proceeding conjecture into those. We request reversal. Thank you so much. Thank you very much. And I want to compliment both counsel for their oral arguments. Thank you for a very pro bono report. Thank you. In the case of Yoakam versus the United States Citizenship and Immigration Services, 2355430 is submitted for decision. And that ends our calendar for today. Thank you very much. And we stand adjourned. All rise. Hear ye, hear ye. All persons having had business with this Honorable United States Court of Appeals for the 9th Circuit will depart for this court for this session. Stands adjourned.
judges: Siler, GOULD, BEA